So, Ms. Rountree, you're here? You're here, so we're ready to go. That's okay. The first case for argument this morning is 14-5084, Beery v. United States. Mr. Hearn. Thank you, Your Honor, and may it please the Court. I am Thor Hearn, and I am here today on behalf of the Kansas landowners bringing this appeal. This case comes before this Court after almost a decade of litigation, more than 3,900 hours of work by attorneys for the landowners, including paralegals, and the Justice Department themselves have spent about 4,800 hours, almost 1,000 more, defending this case. These landowners prevailed entirely on their claims and have since been paid. Can I just let me stop you there because the number you just gave us is the subject of a motion to supplement the record, right? So that number is not currently in the record in this case. I would note that, Your Honor. That is the number that comes from the eight pages of FOIA documents that the Justice Department produced, which is the subject of our motion to supplement the record. And since we're just talking about that, and that is arguably a probative fact in our consideration of this case, the government's view, which I think is pretty strong, frankly speaking only for myself, is that it's too late. It's not a question of your having sought this up front and not getting the answer until after the case ran out, but you didn't even seek this information until after the Court of Claims proceedings was concluded. So why are you entitled to now supplement the record? Well, we did seek it when it was still pending before the Court of Claims. We made our initial FOIA request. The Justice Department did not timely respond to that. We filed up with a second FOIA request, and so it was a year and a half after our first FOIA request. When was the first? I thought the Court of Claims decided the case in January of 2014, and I think it was a week after the Court of Claims' opinion issued that you sought. The case was then on rehearing to the Court of Claims, and it was still before the Court of Claims. It was not a final decision yet when we requested that FOIA information. And had the Justice Department responded timely, we could have provided that to the Court of Claims before the Court of Claims issued a final decision that's subject to this appeal. You mean after its opinion pending reconsideration. Why didn't you ask for it earlier? Well, we had, in the course of discussions with the Justice Department earlier, we had had some indications that they would provide it informally, but at this point we had to request it formally with the FOIA request. And as to the admissibility of this as supplementing the record, we think it's both obviously relevant. It is not just relevant, but there's no disadvantage or prejudice to the Justice Department because they produced and created these records, and also no surprise. I mean these are their own records. There's no question about their authenticity. Yeah, but the Court of Claims, I mean you both went through some considerable time and effort making your arguments to the Court of Claims. The Court of Claims put a lot of time into considering each and every argument presented to her, and this wasn't there to factor in. You presumably think this is a game changer or at least an important factor. Well, if that's the case, then it should have been hers. I mean essentially you're saying, well, throw out everything she said because now we've got this new information that was available beforehand but we didn't ask for beforehand, and now we should just do a do-over based on that new information. How can that be appropriate? Well, we're not saying that. We're not saying you say it's a game changer. I wouldn't characterize the information as a game changer. I do think that it certainly provides some compelling support for our position. But I think the errors the Court of Federal Claims made, she made legal errors that were made that are contrary to the Supreme Court's fee-shifting jurisprudence, contrary to this court, irrespective of considering that additional information. But I do believe that it should be supplemented, the record should be supplemented with this, and that the Justice Department's failure to provide this more timely as they required, it would have been provided to Judge Firestone before she issued a final decision. Just to be sure, what you're saying is if you requested it after the Court of Claims ruled and you're saying how long did they take to provide it? They took almost a year and a half after that before we – after our first – So you're saying if they hadn't taken so long, then you would have presented it to the Court of Claims on reconsideration, but not before the decision of the Court of Claims. Absolutely. Well, the decision the Court of Claims made was really a multi-stage decision. So the Court of Claims made a first decision in 2012 on the methodology for attorney's fee calculation. Then it made another decision in terms of principles to calculate some of the specific fees. That's the decision I believe you're referring to, Judge Prost, in 2014. But that was not the final decision because it not only had reconsideration, we still had to actually calculate the fees in consistency with Judge Firestone's decision. So the 2014 decision was not by any means the final word from the Court of Federal Claims, even before the motion for reconsideration. But had the Justice Department provided that information within 20 days, as the law required for a FOIA request, we would have had that information before Judge Firestone. So that's – You would have had to move before Judge Firestone to admit – to open the record and admit that. Correct. We would have presented that to Judge Firestone in the course of her – in the course of the calculation of the fees pursuant to her decision. The – totally apart from that information that the Justice Department provided, the Court of Federal Claims failed to provide in making the adjustments to the Lodestar. So what it did was it made an almost more than 70% cut to the unadjusted Lodestar fee that was submitted. That decision is certainly contrary to Supreme Court's fee-shifting jurisprudence. It also – Judge Firestone also cut the prevailing market rate from what the Laffey rate would be by 35%. That is a cut from the prevailing D.C. market rate. Both of those are errors that the Court of Claims made that are inconsistent with the Supreme Court's jurisprudence. How so? I mean there's – this is an abusive discretion review. What is the legal error in Lodestar? Well, a quote from Perdue. The quote from Perdue is, It's essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement. Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made. The awards may be influenced or appear to be influenced by the judge's subjective opinion regarding particular attorneys or the importance of the case. So here are the errors she made. First, she made blanket cuts with no evidence to support them. For example, in the Kansas Supreme Court argument, she cut that from 600 hours to 150 hours for two rounds of briefing in the Kansas Supreme Court, oral argument in the Kansas Supreme Court, and provided no evidence or explanation to justify that reduction. The cuts not only in the Lodestar, but the failure to use a prevailing market rate also conflicts with the Supreme Court's jurisprudence. The rates that she adopted, there's no evidence at all in the record to support the – what they call the DOJ Laffey rates, which are 35% less than the rates that are the Salazar adjusted, customarily used rates in the District of Columbia. So those are the rates that should have been done. This court's footnote 4 in Bywaters indicates it accepts the Salazar rates. It also would be a split with the Third Circuit to take the DOJ adjusted rates instead of the Salazar method for adjusting Laffey rates in Washington. How so? As I read the Third Circuit case, yes, they said that the district court didn't abuse its discretion by using the Kavanaugh matrix, but it didn't – that doesn't get you necessarily to the conclusion that this court was compelled to use that matrix and not the Laffey matrix. Well, then the court has, as Perdue said, some obligation to provide evidence on why the method they did adjust Laffey rates was appropriate, and there's no evidence of any sort in the record to support that. All there is is a footnote or citation to a footnote in the Department of Justice's website that has the DOJ Laffey matrix. Either way, you're adjusting the Laffey matrix. The only question is are we going to adjust them based on the change in the cost of pizza, cigarettes, and dry cleaning, or are we going to adjust them based on changes in the legal service index, which is what Salazar has done. And so that's why the Third Circuit's embraced Salazar. That's why this court noted Salazar with approval in the Bywaters decision. I have asked to reserve the balance of my time. Great. Thank you. Good morning, Your Honor. May it please the Court. I believe I heard counsel say that the Federal Circuit in Bywaters adopted the Kavanaugh matrix. If I heard correctly, that is incorrect. The lower court made this point clear, and it's clear from a reading of this court's decision in Bywaters, that there was no explicit adoption of the Kavanaugh matrix. So is it your view that the district court, or in this instance the court of claims, has unreviewable discretion to decide which matrix to use? It's not unreviewable, but the standard of review for this court is for an abuse of discretion. So is the district court compelled, for purposes of our being able to review their decision, their choice between the two, to give some analysis or explanation as to why they're picking one rather than the other? I believe that the character of the matrix itself speaks for itself, but I also think the court needs to understand the context in which this was all presented to the court of federal claims. There was significant amount of evidence presented to the court, in addition to references to cases that have either affirmed the use of the standard Laffey matrix or expressed that its characteristics were sufficient for determining reasonable hourly rates. What I would just like to point out is a starting point here on this particular point concerning the matrices is found in the Supreme Court's decision in both Blum and Purdue, where the court basically said the bottom line is when you're looking for reasonable hourly rates, you look for prevailing market rates in the relevant community. If you look at the standard Laffey matrix, it meets that. But Dufresne relies extensively on Purdue for the argument. For another proposition. Yeah. And that proposition is that the CFC erred in making percentage reductions, and that clearly is not what Purdue stands for in terms of when adjustments are to be made. On that point, Purdue clearly says that the normal course for the Lowe's star calculation is that the court is to look at hours and the hourly rate, make adjustments as it's determining the Lowe's star, and then reach a Lowe's star figure, which has a strong presumption of being reasonable. That's exactly what the court did here. In Purdue, however, the trial court made an upward adjustment after the Lowe's star had been calculated. That's what the Supreme Court had a problem with. That's what this court had a problem with in Bywaters, and that's why those trial courts were reversed, and the trial court was told on remand, do the calculation in the beginning. Look at the factors that you determined were appropriate for adjustment and see if they fit properly within the Lowe's star calculation as it's normally done. And this court actually in Bywaters actually acknowledged that though the results might be the same, the process is to be followed. So this court realized that there is a difference between making an adjustment as part of the Lowe's star calculation versus after. Appellants suggest that there's no difference at all. A close read of both Purdue and Bywaters, a close read of the case, not just of snippets of phrases taken out of context, make clear that what the court is looking at is when the adjustments are made and whether it's in keeping with the strong presumption of reasonableness that the Lowe's star enjoys. But getting back, if I could, to the Laffey matrix, I think there are two particularly compelling reasons why this court will find that the CFC's use of that matrix was within the court's discretion. And this is aside from all of the evidence that's in the record, but this is also in the record. When appellants were in the CFC and trying to convince that court that the hourly rates it should be using were counsel's law firm's national hourly rates, appellants actually stated in their briefing that they wouldn't object if the CFC used the Kavanaugh matrix rates. But they pointed out that the Kavanaugh matrix rates were higher than the law firm's rates, the law firm's national rates. Now, why they said that then was they were trying to convince the court to use the hourly rates. And they were saying, well, if you compare the two, Kavanaugh's higher, but that shows that our law firm rates are reasonable. At this stage of the litigation, where we are right now, that concession shows that the Kavanaugh matrix rates were higher than the national rates for the law firm, which is a reason why the CFC's ultimate decision here not to use the Kavanaugh rates was reasonable. If we look at another example, we have appellant's own expert, Dr. Mallowane. During her deposition, she testified about the problems with applying the Kavanaugh matrix for purposes of determining hourly rates for Washington, D.C. Oh, and I'm sorry, I see a frown on your face, and I don't know what it means, but I'm going to just offer, I'm going to offer the pleadings that I was referring to, where appellants said that the Kavanaugh matrix rates were higher. I'm sorry? You're going to give us a reference? Yes, I apologize. It's at the CFC's docket number 158, page 1, footnote 1, and page 9. Okay. I'm so very sorry. Turning back to the expert of appellants, she, during her deposition, testified that she had written an article in which she pointed out the problems with using the Kavanaugh matrix for purposes of determining proper hourly rates, reasonable hourly rates for Washington, D.C. That's found at the CFC docket number 164-1. She testified that some of the problems with the Kavanaugh matrix included that the matrix addresses the basic consumer-oriented legal services that are usually flat fee or usually very simple, and it measures the inflation increases to these services on a nationwide basis that is not specific to D.C. Dr. Mallowayne's criticisms of Kavanaugh are also found in the Heller decision, which is out of the D.C. District Court. Other reasons why the CFC's use of the standard Laffey matrix was appropriate is because, as I said, it comports with the Supreme Court's guiding principles for determining hourly rates. It provides two things. It provides prevailing market rates, and it's specific to the relevant community. That's because the standard Laffey matrix is based on D.C. hourly rates. The Laffey matrix back in 1983 was originally based on D.C. hourly rates. They were adjusted yearly based on inflation. So the Laffey matrix, the standard Laffey matrix, began with D.C. hourly rates, and it's adjusted annually based on the consumer price index that's specific to Washington, D.C., which is the relevant community in this case. The Laffey matrix also does something that appellants speak to erroneously. The Laffey matrix for – I mean the consumer price index for the District of Columbia addresses inflation rates for goods and services, not just pizza delivery, not just dry cleaning, but goods and services that include legal services. That's actually indicated in the Salazar decision at 123F sub 2nd at page 8 on which appellants themselves rely. So the Laffey matrix has two basic components. It has a component that speaks to the relevant community, being D.C., and it speaks to the change in inflationary rates that includes legal services. Let me just stop you there before your time runs out and ask you about this motion to supplement the record. And if it is the case that you were required to respond to the FOIA request within 20 days and you took rather than that a year and a half, why isn't it problematic? Because we don't know whether or not if they had gotten the information in a timely way they could have gone back to the court of claims in connection with reconsideration and tried to offer that evidence up into the record. Two responses to that. What's been submitted by appellants shows that the government explained that they didn't receive the original request. So the time delay between the original request and the second request that was made was just an error. It's not clear where the original request was. I'm not sure of the actual date of 20 days. I apologize for that. I just heard it from you. I perhaps should know the FOIA date timeframe, but I don't. But what's significant is there are two things. The first is there's nothing that appellants point to in their briefing below or before this court that speaks to the relevance of the government's hours and costs with respect to their fees. This is a question about their fees. Nothing has been briefed about – Wait a minute. But what if we think – but we haven't decided that. But what if we think that there's at least an off chance that the court of claims and then we on appeal under an abusive discretion standard would say, Hey, I thought their 34 hours was way excessive for what they litigated, and now I'm looking at the other side's time spent, and it's up there at, what, 48 or whatever the number is. So it changes my view of really what was an excessive amount of time spent on this case. It's got to be of some relevance. There have got to be cases at the district court where in order to evaluate the use of time for one side, they get the records on the other side. Well, with all due respect, had they made that argument, you'd be right. That argument's not been made. But that aside, there's no reason why appellants couldn't have sought a stay somewhere saying to one of the courts, We've got this big information, never talked about it before, but now it's a big deal, and we need to get it, and we would like for you to stay the proceedings so we can get that information and present it to you for the first time. That was not done. There's no indication as to why they felt their hands were tied, simply because the government wasn't able to collect all of the information. And if you look at the number of cases for which they originally requested this FOIA information, there are quite a few cases. I knew the number, but perhaps over 100? The motion will show that there was a long part of the materials. There were many cases. That was pared down ultimately. But I still don't see how the timing of the government, right or wrong, whatever the reason was, I don't know why they – there's no reason, and they often are a reason as to why they didn't go to the court and say, Please stay the proceedings until we receive this material. I have plenty to say, but are there any particular questions? I have one question for you. You mentioned CFC docket 158. I can't find that particular page you're referring to in the appendix before us. Do you know if it's there? The joint appendix? Mm-hmm. There's a problem with the joint appendix. I just noted, and I called the clerk's office last night and actually called the appellant's office last night, but they were en route, they're flying here. Pages are missing, which is why I gave you the docket number as opposed to a joint appendix number. So I apologize. The only thing I can offer, though, is that perhaps when you return to chambers, you can go and look at the docket number because it's – if you'll see, there are gaps in the joint appendix. There's always gaps if the pages aren't cited in the briefs. In order for the pages to be included in the appendix, they have to actually be cited in the briefs as part of the party's arguments. Otherwise, there will always be gaps in the appendix. Okay. Well, this is just part of the summary judgment pleadings, and I believe, for example, I know I was certain that Dr. Mallowayne's testimony from her deposition was supposed to be in the joint appendix, but those pages are just missing. So I apologize, which is why I offer you docket numbers. Thank you. Thank you, Your Honor. I'll address three very quick points. Point one, in terms of the issue of the Justice Department's time defending this case, that was extensively discussed in the conduct of the case in a justification for these legal fees. We repeatedly brought up to Judge Firestone that the reason the fees and the time was so excessive was because of the conduct of the Justice Department. And we noted particularly in the briefing below, as we do here, that the Justice Department's own making this a test case, a scorched earth litigation strategy, on their part required us to devote the time that we had to spend to it. Now, what we didn't have, what that supplemental information is, is actually the numbers, the actual hours they spent. But the issue was certainly before Judge Firestone, and it was there below. We just couldn't quantify it until they finally answered their FOIA request. Did you say the timing was 20 days or is it 120 days? It is 20 days. It is my understanding the FOIA statute, and I believe we cite it in our supplemental reply, is that it's 20 days that they have to respond to that. And as you mentioned, we had one outstanding FOIA request. They never responded to it. They now say they lost it or didn't receive it. We sent it certified mail. Then finally we get this other request, but we did make it in time that we would still have that information before Judge Firestone entered her final decision in the calculation of the fees. And the original request was filed shortly after the January 2014 decision. That's my recollection. They're attached as exhibits to our motion to supplement the record. Thank you, Your Honor. Secondly, this question about Dr. Malloway and trying to bring into the discussion that that's evidence that supports the use of the DOJ WAFI rates adjustment. That's just not so. That's not in the record. That's not something Judge Firestone considered. Read her opinion. Her opinion says the reason I'm adopting these rates is because I found a website, and she cites it in her footnote on the DOJ. She doesn't mention anything about Dr. Malloway. And if we do look at Dr. Malloway, she doesn't say what's been represented. What Dr. Malloway says is that the LAFI matrix for small firms, for little three-member firms in Virginia, in the suburbs of Virginia, may not be appropriate to the prevailing rate. That's the qualification she made during her deposition. In no way does she dispute using the Salazar adjusted LAFI matrix that we've used, in this case, on the facts and circumstances of this case. But most importantly, in this case, the Justice Department admitted that my firm's hourly rates were, in fact, consistent with prevailing market rates in Washington, D.C. Now, my friend was talking, and she said how we conceded the point that our normal customary rates at Eric Fox are somehow less than the Salazar LAFI. That's correct. It's very nominally less. When you add it up, out of more than $2 million, our normal rates and the Salazar adjusted LAFI rates have a difference of about $800. Just to be clear, for purposes of the record, you keep talking – we keep talking about Kavanaugh, you keep talking about Salazar. Those are one and the same, correct? One and the same. I pick up the reference to Salazar because there's been a series of the Salazar cases. That's how the Supreme Court referred to it in Purdue. That's how the Federal Circuit, this court, referred to it in their footnote, mentioning they used Kavanaugh's matrix to make that adjustment. Let me note, finally, that the challenge that we have to Judge Firestone adjusting the Lodestar is the challenge not to specific hourly adjustments. She made about 237 hours that she excluded from the billing for very specific reasons. We've not challenged that. What we challenge are these blanket, unjustified percentage cuts across one category of fees. A 10% blanket cut just because there's few properties. A 25% cut or 75% cut in the fees for the argument in the Kansas Supreme Court. There's no reason for it. There's no statement that you spent 40 hours on a brief. You should have only spent 20. It's just I'm going to only give you 25% of your time for that work. That's work that we certainly did. What about the cut she made with respect to some of the plaintiffs winning? Was it five out of 30? She made a 30% across-the-board cut because five of the plaintiffs were originally dismissed. Well, this court reversed Judge Firestone, and now three of those plaintiffs have been paid and were brought back in the case. And that kind of adjustment is directly contrary to the Supreme Court's direction in Hensley. Hensley says you don't make that kind of percentage adjustment. We had to spend that time making the same argument for all those plaintiffs, the prevailing plaintiffs. We're only seeking fees for the prevailing plaintiffs. We have any time that's specific to an individual plaintiff that was dismissed was excluded from the billing request. The only time that was there while they were in the case, before she dismissed them and later this court reversed, was time on common issues, which under Hensley and Bloom is time that is compensable. Finally, we would note the essential point that by no measure can a 73% cut in the Lodestar fee that we submitted be considered to be consistent with what Congress intended in the Uniform Relocation Act to enable people such as this to bring their case and to have the justice accomplished for their claim, for the taking of their property. The CFC's decision is sustained as it became a standard of this court would literally prevent the bringing of these cases. Thank you, Your Honor. Thank you, and we thank both counsel and the cases submitted.